UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
OEC FREIGHT (NY), INC.,

                Plaintiff,

-against-                                **MEMORANDUM AND ORDER**
                                                   Case No. 09-CV-2489

PHILIP WHITNEY, LTD., and HARRY J.
PHILIP,
                Defendants.
----------------------------------------------------------------x

*Appearances*:
For the Plaintiff:                                For the Defendant:
JAMES E. RYAN, ESQ.                  ROBERT A. SCHER, ESQ.
CRAIG MATTHEW FLANDERS, ESQ.     DANIEL J. SCHER, ESQ.
Dougherty, Ryan, Giuffra, Zambito & Hession    Scher & Scher, P.C.
250 Park Avenue, 7th Floor              55 Water Mill Lane, Suite 400
New York, NY 10177                       Great Neck, NY 11021

**BLOCK, Senior District Judge:**

I

OEC Freight (NY), Inc., is a shipper of goods. It seeks to recover unpaid freight and shipping charges—plus interest, costs and attorney's fees—from its former customer, Philip Whitney, Ltd. It is undisputed that OEC is entitled to recover from Philip Whitney $39,929.10, plus 15% interest per annum and reasonable costs and attorney's fees.[1]

OEC seeks to hold Harry J. Philip liable for Philip Whitney's obligation pursuant to a personal guarantee. On that claim, the issue in dispute is whether the

---

[1] Although Philip Whitney has conceded OEC's entitlement to interest, costs and attorney's fees, it has not agreed to the *amounts* claimed by OEC. That issue is addressed *infra* Part III.

signature on the personal guarantee is genuine. To resolve that issue, the Court held a bench trial on July 20, 2011.[2] In accordance with Federal Rule of Civil Procedure 52(a)(1), the Court makes the following finding of fact and conclusion of law.

## II

**A. Finding of Fact**

Having heard the evidence and considered the parties' post-trial memoranda, the Court finds that the signature on the guarantee is Philip's genuine signature.

The guarantee introduced into evidence was a fax copy received by OEC. The original presumably remained with Philip Whitney, but was not produced. Defense counsel represented that neither he nor Philip "ha[d] the slightest idea" where the original was. Trial Tr. 114.

Because no one at OEC saw Philip sign the guarantee, OEC's case for genuineness relied on expert testimony. Its "questioned-document" expert, Thomas Picciochi, gave a "qualified opinion that [the signature on the guarantee] was likely a genuine signature." Trial Tr. 73. He based his opinion on a comparison of the signature on the guarantee with several signatures known to be Philip's. From that comparison, Picciochi found eight characterizing features of Philip's typical signature. *See* Pl.'s Exs. 17-

---

[2]OEC's claims fall within the Court's admiralty/maritime jurisdiction. *See* Mem. & O. of Oct. 15, 2010. Such jurisdiction does not carry with it the right to a jury trial. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 n.10 (1989) ("Civil causes of action in admiralty . . . are not suits at common law for Seventh Amendment purposes, and thus no constitutional right to a jury trial attaches.").

24. As he explained, "the more features [there are], the less likely that they can be randomly done by another person." Trial Tr. 83.

On cross-examination, Picciochi explained that "likely" equated to "probably" and "more likely than not." Trial Tr. 87-88. Picciochi's level of certainly is sufficient to satisfy the burden of proof. *See Bradford Trust Co. v. Merrill, Lynch, Pierce & Smith, Inc.*, 622 F. Supp. 208, 212 (S.D.N.Y. 1985); *American Indus. Corp. v. M.V. Margarite*, 556 F. Supp. 206, 209 n.19 (S.D.N.Y. 1981) (both requiring plaintiff to prove genuineness of signature by preponderance of evidence).

Picciochi acknowledged that he could only render a qualified opinion because "there are certain things [he] cannot tell from a copy." Trial Tr. 88. A review of the original signature would have allowed him to look for microscopic signs of forgery ("micro tremors or hesitations"). *Id.* Nevertheless, he observed evidence of "speed, fluency and rhythm" (such as smooth beginning and ending strokes, and varying pen pressure) even in the fax copy. *Id.* at 88-95. Such "indications of naturalness" were sufficient to allow him to render his opinion that the signature was more likely than not genuine, with the caveat that he would have preferred to examine the original. Overall, the Court was impressed with Picciochi's candor.

Although Philip testified that he did not sign the guarantee, he did not offer a definitive explanation for how his signature (or something very like it) appeared on the document. Instead, his expert, Jeffrey Luber, testified that the quality of the fax copy

3

prevented him from determining whether the signature was genuine, a tracing (or other forgery), or a rubber stamp.

Seizing on that last possibility, Philip testified that the company kept a signature stamp, but that its use was not authorized here. The Court finds the rubber stamp theory implausible for two reasons. First, Philip testified that only he and Philip Whitney's CFO, Paul Mercurio, had access to the stamp. *See* Trial Tr. 136 ("He [Mercurio] had it under lock and key.") Yet all parties stipulated that Mercurio would have testified, had he been called, that "[a]t the time that the Credit Application/Guarantee left his possession, the portions of the application below the words 'Agreement' [i.e., the guarantee portion] were not completed or signed," and that "[h]e has no knowledge as to how the portions of the Credit Application/Guarantee not completed by him were filled out." Stip. (Jun. 22, 2011) ¶¶ 7-8. Even assuming *arguendo* that Philip is not bound outright by the stipulation, *see Fisher v. First Stamford Bank & Trust Co.*, 751 F.2d 519, 523 (2d Cir. 1984) ("Generally, a stipulation of fact that is fairly entered into is controlling on the parties and the court is bound to enforce it."), his apparent willingness to accept Mercurio's testimony seriously undermines the plausibility of the theory that Mercurio either used the stamp himself or gave someone else access to it.

Second, the signature on the guarantee is noticeably small. Although it is obvious that the original was reduced somewhat to fit on an 8.5"-by-11" sheet of paper, it is less than half the size of Philip's typical signature. *See, e.g.*, Pl's. Ex. 1. For the rubber stamp theory to work, either the rubber stamp was far smaller than Philip's typical

4

signature, or the original guarantee appeared on paper whose measurements exceeded 17" by 22". As a matter of common sense, the Court finds both possibilities implausible.

In sum, there are a finite number of ways in which Philip's signature could have appeared on the guarantee: either he signed it, or it is a forgery, or it is an unauthorized stamp. Picciochi's opinion—which the Court accepts—is not perfect, but it is adequate to establish the first possibility and exclude the second. The third is, for the reasons mentioned, implausible. Accordingly, the Court finds that the signature on the guarantee is the genuine signature of Harry Philip.

**B. Conclusion of Law**

Since, as the Court has found, Philip signed the guarantee, he must answer for Philip Whitney's admitted debt to OEC. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000) ("A guaranty is 'the promise to answer for the payment of some debt or the performance of some obligation, on default of such payment or performance, by a third person who is liable in the first instance.'" (quoting 63 N.Y. Jur. 2d *Guaranty and Suretyship* § 2 (1987))).

**III**

Judgment cannot yet be entered because neither defendant has agreed to the amount of interest, costs and attorney's fees claimed by OEC. OEC has submitted an interest calculation and a detail of fees and costs, but both are now out of date.

Therefore, OEC shall, within 14 days of the date of this Memorandum and Order, file and serve an updated calculation of interest (including a per diem calculation

5

for interest accruing subsequently) and an updated detail of fees and costs. If the defendants have any objections to the amounts sought, they shall file and serve them within 14 days of OEC's submission. After reviewing the parties' submissions, the Court will decide if an evidentiary hearing is required.

**SO ORDERED.**

_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
November 9, 2011